Barbara SCHULTE and James Schulte, Plaintiffs-
Respondents,†

v.

Lawrence J. FRAZIN, M.D., Physicians Insurance Com-
pany of Wisconsin and Wisconsin Patients Compensa-
tion Fund, Defendants-Respondents,††

COMPCARE HEALTH SERVICES INSURANCE CORPORATION,
Defendant-Appellant.

Court of Appeals

*No. 91–1185. Submitted on briefs February 4, 1992.—Decided
April 21, 1992.*

(Also reported in 484 N.W.2d 573.)

†Petition to review granted.

††Petition to review granted.

710

For the defendant-appellant the cause was submitted on the briefs of *Elizabeth Bartlett* and *Shindell & Shindell* by *Lawrence M. Shindell,* of Milwaukee.

For the plaintiffs-respondents and defendants-respondents the cause was submitted on the briefs of *Cannon & Dunphy, S.C.* by *William M. Cannon* and *Jeffrey R. Munson,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Compcare Health Services Insurance Corporation (Compcare) appeals from an order of the trial court (1) dismissing its cross-claim against co-defendants Lawrence J. Frazin, M.D., and his insurers, Physicians Insurance Company of Wisconsin and the Wisconsin Patients Compensation Fund (collectively, Frazin) and (2) denying it leave to amend the pleadings.

Lawrence Frazin performed spinal surgery on Barbara Schulte in June, 1988. During this surgery, a drill instrument entered her spinal cord causing permanent injury, which required extensive medical care and treatment. Compcare, as Schulte's health insurer, claims it paid in excess of $90,000 for Schulte's post-operative treatment. Schulte and her husband, James (collectively, Schulte) commenced this action against Frazin on June 7, 1989, alleging that his medical malpractice was the cause of her injuries. Schulte included Compcare as a party defendant based upon Compcare's subrogation rights. *See* sec. 803.03(2), Stats. Frazin and his insurers denied liability in their joint answer of June 12, 1989.

Compcare filed separate responsive pleadings with the court, serving copies on its co-defendants as well as Schulte. These pleadings, denominated Answer, Crossc-

laim and Counterclaim, stated that Compcare "counter-claims against the plaintiffs and cross-claims against all co-defendants" and "realleges the plaintiffs' complaint"; these pleadings also asserted that

> [i]f the plaintiffs' claim should be settled prior to verdict, under circumstances wherein it is claimed that the plaintiff is not made whole and that the subrogated interest of Compcare is extinguished . . . Compcare is entitled to a full hearing on all pertinent issues, and a declaratory ruling as to what extent it may equitably share in said settlement.

Compcare then "demand[ed] judgment for damages allowed by law in the event of any settlement or verdict recovery by the plaintiffs." Frazin subsequently filed a separate answer to Compcare's crossclaim.

By the court's pretrial order of March 1, 1990, *see* sec. 802.10(3)(a) & (b), Stats., the defendants were required to disclose witnesses and provide written reports from all liability and economic expert witnesses by September 1, 1990. Trial was scheduled for March 4, 1991. On February 8, 1991, Compcare notified Frazin's counsel, by letter, that the total subrogated claims were for $88,487.46 and sought to obtain a stipulation that, *inter alia,* would make it unnecessary for Compcare to take part in the trial. Failing agreement to this stipulation, Compcare's letter stated that it would call two of its employees as witnesses and "reserve[d] the right to call as witnesses all persons identified by any of the other parties to this lawsuit." Compcare acknowledges the February 8 submission was untimely.

Before the scheduled trial, Schulte and Frazin reached a settlement. This settlement did not include any payment to Compcare; it did include an agreement that Schulte would indemnify and hold Frazin harmless

if Compcare litigated its claim against Frazin. On March 4, 1991, Compcare moved the court to enjoin or void the settlement;[1] the trial court ruled this motion untimely. A *Rimes* hearing[2] was held on March 7, 1991. Following considerable discussion and an oral ruling by the trial court that "Compcare has not alleged a crossclaim," Compcare made an oral motion to "ask the Court to permit its Pleading to conform to the claim it's been making and which people are aware of."[3] This motion was denied by the trial court.

Following this hearing, the trial court made a finding of fact that the settlement[4] between Schulte and Frazin "did not make the plaintiffs whole under Wisconsin law." On March 21, 1991, the trial court granted Schulte's motion to extinguish Compcare's subrogation lien. On April 15, 1991, the trial court dismissed Schulte's complaint, and Compcare's counter- and crossclaims, with prejudice. It is from this order that Compcare appeals.

*The Subrogation Claim*

The extinguishment of Compcare's subrogation right is a question of law, which an appellate court

---

[1]Compcare also moved to compel Frazin to produce certain documents.

[2]*Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 276–279, 316 N.W.2d 348, 355–356 (1982) (determination of sum that would have made plaintiff whole).

[3]There is also an alternative phrasing of the motion: "the Court amend or permit Compcare to amend its Pleading to state and clarify whatever confusion the defendant tort feasor [sic] believes is there under the present Pleading."

[4]The amount of this settlement was approximately $2.46 million.

decides without deference to the decisions of the trial court.[5] The trial court's ruling to extinguish Compcare's separate claim is in direct conflict with *Mutual Service Casualty Co. v. American Family Insurance Group*[6] and *Blue Cross* & Blue Shield United of Wisconsin v. Fireman's Fund Insurance Company of Wisconsin.[7] We reverse.

Long-standing Wisconsin law provides:

> [A]n insurer who pays a claim on behalf of its insured, under a policy providing for subrogation, has a cause of action against the tortfeasor and the tortfeasor's insurer for its subrogated interest. . . . [W]e have characterized the interests of the insurer and the insured as each owning separately a part of the claim against the tortfeasor.
>
> Because an insured and insurer each own separately part of the claim against the tortfeasor, a settlement or recovery by the insured operates to satisfy *only* the part of the claim owned by the insured. . . . [so] *the part of the claim owned by the insurer remains unsatisfied and may be sued upon by the insurer.* Thus, when a tortfeasor's insurer and the injured party enter into a settlement which neither involves the subrogated insurer as a party to the settlement nor provides for the payment of the subrogated insurer's subrogated interest, the tortfeasor fails to satisfy the part of the claim owned by the subrogated insurer.[8]

---

[5]*Mutual Serv. Casualty Co. v. American Family Ins. Group,* 140 Wis. 2d 555, 560-61, 410 N.W.2d 582, 584 (1987).

[6]140 Wis. 2d 555, 410 N.W.2d 582 (1987).

[7]140 Wis. 2d 544, 411 N.W.2d 133 (1987). *Blue Cross* and *Mutual Service,* both decided on May 15, 1987, are opinions concerning similar topics.

[8]*Mutual Service,* 140 Wis. 2d at 561, 410 N.W.2d at 584 (citations omitted, emphasis added).

*Mutual Service* describes precisely the predicament of Frazin in the case at bar. Under the undisputed facts presented above, Schulte and Frazin entered into a settlement agreement that neither involved Compcare nor provided for payment of its interest. Thus Frazin has failed to satisfy that part of the claim owned by Compcare.[9]

We note that neither *Garrity v. Rural Mutual Insurance Company*[10] nor *Rimes v. State Farm Mutual Automobile Insurance Company*[11] is applicable in an action brought by a subrogated insurer against the tortfeasor or its insurers when the insured has previously settled with the tortfeasor.[12] "[T]he rule from *Garrity* and *Rimes* [is] not the absolute rule that an insured must be made whole before an insurer could recover but, instead, that subrogation is an equitable doctrine whose application depends upon a just resolution of a dispute under a particular set of facts."[13] "[A]n insured who has settled his or her part of the claim against the tortfeasor does not have to be made whole before a subrogated insurer may bring a subrogation claim against a tortfeasor or his or her insurer . . .."[14] Our supreme court has stated that its primary concerns in *Garrity* and *Rimes* were the "equities of an insurer competing with its own insured for funds which were insufficient to make the insured whole."[15] The "compelling equitable

---

[9]However, Frazin will recover any monies he must pay to Compcare because of his hold harmless agreement with Schulte.

[10]77 Wis. 2d 537, 253 N.W.2d 512 (1977).

[11]106 Wis. 2d 263, 316 N.W.2d 348 (1982).

[12]*Mutual Service,* 140 Wis. 2d at 563–64, 410 N.W.2d at 585.

[13]*Blue Cross,* 140 Wis. 2d at 550, 411 N.W.2d at 135.

[14]*Id.* at 546, 411 N.W.2d at 133.

[15]*Id.* at 550–51, 411 N.W.2d at 135.

factor,"[16] i.e., the existence of limits that prevented making the insured whole, present in *Rimes,* but absent in *Blue Cross,* is also absent in this case. Here, there is no evidence that the policy limits available to Schulte had not been exceeded,[17] a situation similar to *Blue Cross,* and Compcare seeks recovery only from Frazin, not directly from Schulte, in distinct contrast to *Rimes,* where a portion of the injured insured's settlement had been placed in escrow pending resolution of the subrogation claim.[18]

Although each of the three prior cases, *Rimes, Blue Cross,* and *Mutual Services,* has some similarities and some dissimilarities with the case at bar, the situation of Compcare in the case at bar is most similar to the subrogated insurer in *Blue Cross:* Compcare was notified of a settlement *far below the policy limits* only *after* the settlement had occurred.[19] Therefore, our decision today is controlled by *Blue Cross.* Schulte urges that there are equitable limits placed upon Compcare's recovery, i.e., that there are only "limited funds" that a tortfeasor is willing to offer to settle the entire claim, as in *Rimes.*[20]

---

[16]The "compelling equitable factor" is described both as "the prospect of an insurer seeking funds from its own insured who had not been made whole," *Blue Cross,* 140 Wis. 2d at 548, 411 N.W.2d at 134, and "the prospect of an insurer competing with its own insured for funds which are insufficient to make the insured whole," *id.* at 551, 411 N.W.2d at 135. While there may be a subtle distinction between the subrogated insurer directly seeking funds from its insured and, in contrast, seeking funds from a third party resulting in an eventual loss to the insured, the interchangeable usage in *Blue Cross* demonstrates that this is merely a distinction without a difference.

[17]*See* secs. 655.27 and 655.23(4), Stats.

[18]*Rimes,* 106 Wis. 2d at 267, 316 N.W.2d at 351.

[19]*Blue Cross,* 140 Wis. 2d at 547, 411 N.W.2d at 134.

[20]In *Rimes,* settlement was reached within the limits of the

717

While there may be some psychological or practical limits arising from such a source, there is no legally enforceable limitation, such as the escrowed funds in *Rimes.* Schulte also argues, and we do not disagree, that, ultimately, recovery by Compcare will result in a loss to Schulte by virtue of the indemnification agreement between Schulte and Frazin. However, such an indemnification agreement was in place in *Blue Cross,* [21] where our supreme court expressly declined [22] to hold that "an indemnification agreement [that] essentially attempts to circumvent an insurer's subrogation rights" may impair otherwise valid subrogation rights. [23] This court is bound

---

joint tortfeasors' policies. *Rimes,* 106 Wis. 2d at 267, 316 N.W.2d at 351. However, a portion of the settlement was paid directly to the injured insured and smaller portion was placed in escrow with the trial court, pending resolution of the insured's, and the subrogated insurer's, claims.

[21] *Blue Cross,* 140 Wis. 2d at 553–54, 411 N.W.2d at 136.

[22] The Wisconsin Supreme Court noted that at least one other jurisdiction had found such indemnification agreements void as against public policy. *Blue Cross,* 140 Wis. 2d at 554 n.6, 411 N.W.2d at 136 n.6.

[23] *Blue Cross,* 140 Wis. 2d at 554, 411 N.W.2d 136. *See also, Mutual Service,* 140 Wis. 2d 555, 410 N.W.2d 582. In *Mutual Service,* a tortfeasor's insurer made out a check for the subrogated amount to three payees: plaintiff, plaintiff's counsel, and the subrogated insurer. *Id.* at 559, 410 N.W.2d at 583. Unable to obtain these funds, subrogated insurer filed suit against tortfeasor's insurer. The trial court dismissed the subrogated insurer's claims and directed payment to plaintiff. The supreme court reversed and remanded with instructions to reinstate the subrogated insurer, *id.* at 564, 410 N.W.2d at 585, stating, "[A]bsent some indication that [plaintiff] had the authority to settle the part of the claim owned by [the subrogated insurer], [plaintiff's] agreement with [tortfeasor's insurer] could not and did not impair [the

by such precedent.[24]

We hold that the trial court's dismissal of Compcare's subrogation claim against Frazin was impermissible under the law of Wisconsin. Consequently, we reverse the order of the trial court.

### Amendment of the Pleadings

Following the settlement between Schulte and Frazin, a settlement that was made without the participation of Compcare and made no provision for its subrogation interest, Compcare sought the leave of the court to amend its pleadings.[25] We have previously recognized that Compcare does have a separate claim under Wisconsin law. This separate claim was expressed in Compcare's crossclaims and counterclaims against Frazin and Schulte, respectively. No amendment of the pleadings was necessary.[26] The trial court erred as a matter of law when it disallowed Compcare's counterclaim and crossclaims.[27]

---

subrogated insurer's] right to enforce its part of the claim." *Id.* at 562, 410 N.W.2d 584.

[24]*Lindas v. Cady,* 142 Wis. 2d 857, 863, 419 N.W.2d 345, 348 (Ct. App. 1987), *aff'd in part and rev'd in part on other grounds,* 150 Wis. 2d 421, 441 N.W.2d 705 (1989).

[25]*See* sec. 802.09, Stats.

[26]*See Korkow v. General Casualty Co. of Wis.,* 117 Wis. 2d 187, 192–93, 344 N.W.2d 108, 111–12 (1984) (Wisconsin has abandoned highly formal concepts of common-law pleading in favor of more functional concepts).

[27]*See Datronic Rental Corp. v. DeSol, Inc.,* 164 Wis. 2d 289, 292, 474 N.W.2d 780, 781 (Ct. App. 1991) (Decision based upon erroneous view of the law is an abuse of discretion.).

## Timely Submission of Compcare's Witness List

The parties do not dispute that Compcare failed to submit a witness list as required by the pretrial scheduling order, nor did it timely file expert reports. The trial court ruled that this list was not filed in a timely manner. However, the trial court did not discuss any actual prejudice to other parties arising from Compcare's failure to disclose names of witnesses and provide reports despite the fact that Compcare raised this point. In fact, the trial court made no specific reference to either the facts[28] or the law upon which it based its decision.

It is well established in Wisconsin law that amendment of scheduling orders and dismissal for failure to prosecute are decisions within the sound discretion of the trial court.[29] However, "the exercise of discretion is not the equivalent of unfettered decision-making."[30] It is essential that the trial court state, on the record, and consider together the facts of record and the law relied upon for its decision.[31] We note with particularity that our careful examination of the entire record reveals neither a statement of the relevant legal standards governing amendment of scheduling orders nor any applica-

[28]I.e., the particular circumstances necessitating amendment of the scheduling order.

[29]*See, e.g., Trispel v. Haefer,* 89 Wis. 2d 725, 731, 279 N.W.2d 242, 245 (1979) (examination of possible abuse of discretion in dismissal for failure to comply with pretrial orders including production of medical report); *Cukrowski v. Mt. Sinai Hosp.,* 67 Wis. 2d 487, 494–500, 227 N.W.2d 95, 99–102, *cert. denied,* 423 U.S. 914 (1975).

[30]*Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981), *cited with approval in State v. Seigel,* 163 Wis. 2d 871, 889, 472 N.W.2d 584, 592 (Ct. App. 1991).

[31]*Id.*

tion of such legal standards to the relevant facts of this case. For these reasons, we reverse the decision of the trial court and remand with directions to reconsider Compcare's request to file a witness list despite its failure to comply with the scheduling order.

For the guidance of the trial court on remand, we note that the effective dismissal of a cause of action by a decision that precludes naming expert liability witnesses is now controlled by *Schneller v. St. Mary's Hospital Medical Center*,[32] in conjunction with *Monson v. Madison Family Institute*,[33] and *Johnson v. Allis Chalmers Corp.*[34] The decision to modify a scheduling order is within the court's discretion; such decisions will not be reversed unless there is an abuse of discretion.[35] In most cases, the proper standard to be used in an evaluation of a trial court's modification of a scheduling order

---

[32]162 Wis. 2d 296, 470 N.W.2d 873 (1991).

[33]162 Wis. 2d 212, 470 N.W.2d 853 (1991).

[34]162 Wis. 2d 261, 470 N.W.2d 859 (1991). The supreme court decided three cases, *Schneller, Monson,* and *Johnson* on June 5, 1991. All three cases "involv[e] dismissals for failure to prosecute." *Monson,* 162 Wis. 2d at 223, 470 N.W.2d at 858. These cases were clearly decided after the March 7, 1991 hearing in the case at bar. Therefore, our decision to remand is not based upon a failure to rely upon the law as stated in these three cases. Rather, our decision to remand is based upon the trial court's abuse of discretion consisting of a failure to state the relevant law and the facts upon which it relied, with a further statement of a rational mental process linking the two. *See Hartung,* 102 Wis. 2d at 66, 306 N.W.2d at 20–21. However, any decision of the circuit court subsequent to *Schneller, Monson,* and *Johnson,* such as the decision to be made upon remand of this cause, must follow the interpretation of Wisconsin law developed in those cases.

[35]*Schneller,* 162 Wis. 2d at 305, 470 N.W.2d at 876.

is "a failure to state any cause."[36] However, when denial of a motion to amend a scheduling order has "the severe effect of causing the ultimate dismissal of the [plaintiff's] case. . . . [appellate courts] must further evaluate the [trial] court's actions under the standards [the supreme court] set forth in *Johnson* governing the dismissal of an action as a sanction for a party's failure to comply with court orders."[37] These "established standards" are a reasonable basis showing that "the noncomplying party's conduct was egregious *and* there was no 'clear and justifiable excuse' for the party's noncompliance."[38] Under *Johnson,* our supreme court clearly stated that "the nominal nature of some violations of court orders may make dismissal inappropriate despite the lack of a clear and justifiable excuse"[39] and directed reviewing courts to make a further consideration of "whether there was a reasonable basis for the circuit court's determination that the party's conduct in failing to comply with a court order was egregious."[40]

We further note that our supreme court has stated that "a circuit court's discretion to dismiss a case should not be restricted by the establishment of a prejudice requirement"[41] and has declined to "enumerate a list of relevant factors that the circuit court must review on the record in each case."[42] Thus, the circuit court will be required to use its discretion to properly place the

[36]*Id.* at 306–308, 470 N.W.2d at 876–77.

[37]*Id.* at 308, 470 N.W.2d at 877.

[38]*Id.* at 311, 470 N.W.2d at 878 (emphasis added) (citing *Johnson,* 162 Wis. 2d at 276–77, 470 N.W.2d at 865).

[39]*Johnson,* 162 Wis. 2d at 276, 470 N.W.2d at 864–65.

[40]*Id.* at 276, 470 N.W.2d at 865.

[41]*Id.* at 282, 470 N.W.2d at 867.

[42]*Id.* at 286, 470 N.W.2d at 868–69.

actions of Compcare on a spectrum that ranges from "nominal" violations of court orders to "egregious conduct," by "focusing on the degree to which the party's conduct offends the standards of trial practice."[43] To further assist the trial court, we note that in *Johnson, Schneller* and *Monson* (1) the trial court gave warnings of the consequences of violating scheduling orders, (2) the trial court initially granted extensions of various deadlines, and (3) the sanctioned party demonstrated a recurring pattern of failure to comply.

*By the Court.*—Order reversed and cause remanded with directions.

[43]*Id.* at 286, 470 N.W.2d at 869.