Barbara SCHULTE and James Schulte, Plaintiffs-
Respondents-Petitioners,

v.

Lawrence J. FRAZIN, M.D., Physicians Insurance Com-
pany of Wisconsin and Wisconsin Patients
Compensation Fund, Defendants-Respondents-
Petitioners,

COMPCARE HEALTH SERVICES INSURANCE CORPORATION,
Defendant-Appellant.†

Supreme Court

*No. 91–1185. Oral argument January 6, 1993.—Decided June
4, 1993.*

(Also reported in 500 N.W.2d 305.)

†Motion for reconsideration filed June 24, 1993.

For the plaintiffs-respondents-petitioners and the defendants-respondents-petitioners there were briefs by *William M. Cannon, Mark L. Thomsen, Jeffrey R.*

*Munson* and *Cannon & Dunphy, S.C.*, Milwaukee, and oral argument by *William Cannon*.

For the defendant-appellant there was a brief by *Elizabeth Bartlett*, Milwaukee and *Lawrence M. Shindell* and *M. Elizabeth Burns* and *Shindell & Shindell*, Milwaukee and oral argument by *Elizabeth Bartlett*.

Amicus Curiae brief was filed by *Terry J. Booth* and *Fellows, Piper & Schmidt*, Milwaukee for Wisconsin Health Insurers.

LOUIS J. CECI, J.    This case comes before the court on petition for review of a court of appeals decision, *Schulte v. Frazin,* 168 Wis. 2d 709, 484 N.W.2d 573 (Ct. App. 1992), which reversed an order of the circuit court for Milwaukee County, David V. Jennings, Jr., Circuit Judge. The circuit court judge's order dismissed the plaintiff Schultes' (the Schultes) complaint and the cross-claim and counterclaim of subrogated insurer Compcare Health Services Insurance Corporation (Compcare) with prejudice because the Schultes and the defendants had settled and the court had granted the Schultes' motion to extinguish Compcare's subrogation rights. The sole issue on review is whether Compcare may recover the subrogated amount. The circuit court held it could not, and the court of appeals reversed. Because the court of appeals' holding creates the inequitable prospect of Compcare's competing with the Schultes for funds which indisputably fail to make the Schultes whole, we reverse.

Barbara Schulte underwent spinal surgery in June of 1988. Dr. Frazin performed the surgery. During the surgery, a drill came into contact with Mrs. Schulte's spinal cord, causing severe and permanent injuries. Compcare, Mrs. Schulte's medical insurer,

paid roughly $90,000 for medical treatment of Mrs. Schulte.

The Schultes filed a complaint, alleging medical malpractice against Dr. Frazin and his insurers, Physicians Insurance Company of Wisconsin, Inc. and Wisconsin Patients Compensation Fund (Dr. Frazin). The Schultes joined Compcare as a party because of its subrogated interest. *See* sec. 803.03(2), Stats.

Dr. Frazin filed an answer, denying all liability for Mrs. Schulte's injuries.

Compcare filed an answer, a counterclaim against the Schultes, and a cross-claim against Dr. Frazin. Compcare's pleading stated in pertinent part:

> 2. If the plaintiffs' claim should be settled prior to verdict, under circumstances wherein it is claimed that the plaintiff is not made whole and that the subrogated interest of Compcare is extinguished, then, and in that event, Compcare is entitled to a full hearing on all pertinent issues, and a declaratory ruling as to what extent it may equitably share in said settlement.
>
> WHEREFORE, Compcare demands judgment for damages allowed by law in the event of any settlement or verdict recovery by the plaintiffs, together with its costs, disbursements and interest as prescribed by law.

During February, 1991, the circuit court made several unsuccessful attempts to resolve the matter via a settlement among all parties. On February 27, 1991, Dr. Frazin and his insurance carrier settled with the Schultes for $2,460,000. The settlement agreement did not include any payment to Compcare for the subrogated amount. Additionally, the settlement agreement provided that the Schultes would indemnify Dr. Frazin and his insurance carriers for any liability arising out

626

of the incident. The Schultes assert that one of the terms of the settlement was that a hearing would take place in order to resolve whether Compcare had a right of subrogation. The day after they settled, the Schultes moved to extinguish Compcare's subrogation lien on the ground that the settlement amount had not made them whole.

The circuit court held a hearing to determine whether the settlement had made the plaintiffs whole. *See Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 316 N.W.2d 348 (1982). Compcare did not actively participate in the hearing, except for examining one of the Schultes' witnesses regarding the indemnification agreement which the settlement contained. Nevertheless, Compcare asserted it was not waiving its rights. Compcare asserted that regardless of whether the Schultes had been made whole, Compcare could still proceed on its cross-claim against the tortfeasor.

During the *Rimes* hearing, the Schultes presented evidence that their damages amounted to between $2,950,000 and $4,790,000. The court determined that the settlement had not made the Schultes whole and, therefore, entered an order extinguishing Compcare's subrogation lien. On April 15, 1991, the circuit court entered an order dismissing the Schultes' complaint and Compcare's counter and cross-claims with prejudice. Compcare appealed from that order.

The court of appeals reversed, relying on *Blue Cross v. Fireman's Fund,* 140 Wis. 2d 544, 411 N.W.2d 133 (1987), and *Mutual Service v. American Family,* 140 Wis. 2d 555, 410 N.W.2d 582 (1987). This court granted a petition for review filed by the Schultes and Dr. Frazin.

627

The issue to be decided concerns the respective rights of the insured and the subrogated insurer when the insured has settled with the defendants without involving the subrogated insurer; the insured has requested a *Rimes* hearing; the subrogated insurer has had an opportunity to participate in the hearing; and the circuit court has determined that the settlement has not made the plaintiff whole. This issue presents us with a question of law which we decide without deference to the lower courts. *Mutual Service,* 140 Wis. 2d at 560–61.

There is no dispute that the settlement did not make the plaintiffs whole. *See generally Rimes,* 106 Wis. 2d at 275 ("Under Wisconsin law the test of wholeness depends upon whether the insured has been completely compensated for all the elements of damages, not merely those damages for which the insurer has indemnified the insured."). Compcare, the subrogated insurer, argues that under *Blue Cross* and *Mutual Service,* it may recover the subrogated amount regardless of whether the Schultes have been made whole. The Schultes, on the other hand, contend that under *Rimes* and *Garrity v. Rural Mut. Ins. Co.,* 77 Wis. 2d 537, 253 N.W.2d 512 (1977), Compcare may not recover because the Schultes have not been made whole. We agree with the Schultes.

The doctrine of subrogation is based upon equitable principles. *Rimes,* 106 Wis. 2d at 271. "Equity does not lend itself to the application of black letter rules." *Vogt v. Schroeder,* 129 Wis. 2d 3, 12, 393 N.W.2d 876 (1986). To resolve the issue in this case, we must apply equitable principles to the facts. *Id.*

628

In *Garrity,* we established the equitable principle that "the subrogee has no right to share in the fund recovered from the tortfeasor until the subrogor is made whole." *Garrity,* 77 Wis. 2d at 547. We reasoned that "where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Id.* at 542.

*Rimes* reaffirmed the principle that "[s]ubrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor." *Rimes,* 106 Wis. 2d at 272. Rimes was involved in an auto accident and together with his wife started an action against the other drivers involved and their insurers. *Id.* at 265. State Farm, Rimes' insurer, had made medical payments to Rimes and was thus joined as a defendant because of its possible subrogation rights. *Id.* at 265–66. State Farm filed an answer, alleging its subrogation rights, and participated in the case. *Id.* at 266.

On the second day of trial, Rimes and his wife settled their claims for $125,000. Of the $125,000, the amount of the medical payments ($9,649.90) was paid into an escrow account to await the outcome of a hearing on State Farm's subrogation rights. *Id.* at 267. The trial court held a hearing at which it determined that the settlement amount had not made the Rimeses whole and thus, under *Garrity,* the insurers had no right of subrogation. *Id.* at 269. We affirmed, saying, "The purpose of subrogation is to prevent a double recovery by the insured. . . . Subrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor." *Id.* at 272. We also approved of the use of what has come to be referred to as a *Rimes* hearing—a hearing at which the circuit

court determines what sum would make the settling plaintiffs whole. *Id.* at 278–79.

*Rimes* has much in common with this case. In both cases the injured insured requested a *Rimes* hearing so that the circuit court could determine whether the injured insured had been made whole. Consistent with *Rimes,* after the Schultes settled, they filed a motion asserting that Compcare's right to share in the settlement proceeds depended on the court's finding that the settlement had made the Schultes whole. The circuit court held a *Rimes* hearing and found that the settlement had not made the plaintiffs whole. Moreover, in both cases, if the circuit court had determined that the question of whether the plaintiffs had been made whole was irrelevant to the subrogated insurer's right to recover, the subrogated insurer would have recovered from the plaintiffs' insufficient settlement funds. In *Rimes,* the subrogated insurer would have recovered from the escrowed funds. In this case, Compcare, because of the indemnification clause, would essentially recover from the Schultes. Under *Garrity* and *Rimes,* the circuit court, after conducting the required hearing, properly held that Compcare had no right of subrogation.

*Rimes* was not, however, our last word on subrogation and the made-whole inquiry. In *Vogt,* we recognized that the equities to be balanced in *Garrity* and *Rimes* were between an insurer's right to recoup benefits paid and an injured person's right to obtain full compensation. The equities in *Vogt* were between an underinsurer who had paid benefits and an underinsured tortfeasor who had not paid for the damages she had caused. *Vogt,* 129 Wis. 2d at 16–17. Thus, we recognized a new equitable principle, apart from the made-whole principle: "[T]he wrongdoer should be

responsible for his conduct and not be allowed to go scot-free by failing to respond in damages while another, an indemnitor for the injured party, is required to do so." *Id.* at 13. *Vogt* established that the *Rimes* made-whole principle was not absolute and set the stage for *Blue Cross* and *Mutual Service.*

Compcare argues that under *Blue Cross* and *Mutual Service,* the *Rimes* made-whole inquiry is irrelevant to the issue of whether the subrogated insurer may pursue a direct action against the tortfeasor. We disagree. Compcare's argument overlooks the distinctions between this case and *Blue Cross* and *Mutual Service.* Most importantly, the parties in *Blue Cross* and *Mutual Service* did not resolve the subrogated insurers' rights in a *Rimes* hearing as they did in this case. Moreover, we have also come to disagree with the reasoning of portions of the *Blue Cross* and *Mutual Service* opinions. Thus, we do not give *Blue Cross* and *Mutual Service* the same weight as Compcare.

In *Blue Cross,* the issue was "whether a subrogated insurer, to state a claim for relief, must allege that an insured who has settled with the tortfeasor has been made whole." *Blue Cross,* 140 Wis. 2d at 546. We noted that *Vogt* recognized that the principle that the insured must be made whole before the subrogated insurer may recover was not absolute, but depended on the equities and thus the facts involved. *Id.* at 550. We stated that an injured insured who has settled his part of his claim against the tortfeasor before the subrogated insurer commences suit against the tortfeasor does not have to be made whole before the subrogated insurer can state a claim for relief against the tortfeasor and his insurer. *Id.* at 546.

We concluded that the equitable factor present in *Garrity* and *Rimes*—the prospect of an insurer compet-

ing with its own insured for funds which are insufficient to make the insured whole—was not present. The court distinguished the case from *Garrity* and *Rimes* on the basis of two facts. First, the subrogated insurer did not seek to recover funds from the injured insured. Instead, the complaint sought recovery from the tortfeasor and his insurer. Thus, according to the *Blue Cross* court, the subrogated insurer was not directly competing with its insured for a limited set of funds. Second, the injured insured had settled his part of the claim before the subrogated insurer initiated its suit against the tortfeasor.

The *Blue Cross* court correctly noted that where the insured has not settled with the tortfeasor before the subrogated insurer brings suit, any recovery the insurer makes could reduce the amount available to compensate the injured insured. *Id.* at 552. It gave the following example:

> Such a reduction in the insured's recovery would occur in a case in which the tortfeasor's assets were limited to $100,000, and the damages to the injured party were $200,000. If the subrogated insurer had a claim for $30,000 and was allowed to recover this amount prior to any suit by the injured party, the amount of money left to compensate the injured party would decrease from $100,000 to $70,000.

*Id.,* n.3. We agree with this analysis. It illustrates an insured and subrogated insurer competing with each other for limited settlement funds. The *Blue Cross* court recognized that in this situation *Garrity* and *Rimes* applied to prohibit the insurer from recovering until the insured had been made whole. *Id.* at 552.

The *Blue Cross* court erred, however, in failing to recognize that the same type of competition for limited

632

funds exists in other settlement situations. The *Blue Cross* court asserted that the "injured party's recovery is not constrained by the existence of the subrogated insurer's cause of action." *Id.* at 553. We disagree. Indeed, even Compcare in its brief admits, "A tortfeasor who wishes to settle must inevitably address the insurer's separate rights in some way."

Given the realities of settlements, settling plaintiffs and subrogated insurers usually compete in a practical sense for limited settlement funds. Settling defendants typically have limited policy limits and assets and typically want to pay as little as possible. Settling plaintiffs typically want as much as possible. Moreover, we question why a defendant would offer as much to settle with only the plaintiff as to settle with both the plaintiff and the subrogated insurer. *See generally Vogt,* 129 Wis. 2d at 25–26. Dr. Frazin, for example, apparently insisted on such a complete release, hence the indemnification agreement and the agreement to seek a *Rimes* hearing.

The court of appeals in this case recognized that settlement funds may be either practically or psychologically limited. But the court of appeals concluded these limits were not worthy of legal recognition. *Schulte,* 168 Wis. 2d at 717–18. We disagree. The practical competition between an insured and the subrogated insurer is an equitable factor we cannot ignore.

The *Blue Cross* court discussed an indemnification agreement similar to the one made between the Schultes and Dr. Frazin. The *Blue Cross* plaintiffs agreed to indemnify the tortfeasor's insured for any claims made by the subrogated insurer. Such an

633

indemnification agreement indirectly creates the prospect that the insurer will be competing with its own insured. Nevertheless, the *Blue Cross* court refused to recognize the effect this indemnification agreement had and concluded that such an agreement attempts to circumvent an insurer's subrogation rights by placing the responsibility for the tortfeasor's wrong on the victim. *Blue Cross*, 140 Wis. 2d at 554. Consequently, the *Blue Cross* court concluded that the indemnification agreement did not impair the otherwise valid subrogation right. *Id.*

We disagree with the *Blue Cross* court's analysis of indemnification agreements and consequently overrule the language in *Blue Cross* which disapproves of such agreements. *See id.* at 553–54. First of all, that language ignores the rights of competent parties to enter into such contracts. *See* Arnold P. Anderson, *Wisconsin Insurance Law* sec. 12.7 at 351 (3d ed. 1990). More importantly, we believe the injured party should have the right to settle on its own terms. Wisconsin has a "long-standing policy in favor of settlements." *Collins v. American Family Mut. Ins. Co.,* 153 Wis. 2d 477, 490, 451 N.W.2d 429 (1990) (citations omitted). "[T]he public interest requires that a plaintiff be permitted to settle claims . . . ." *Loy v. Bunderson,* 107 Wis. 2d 400, 425, 320 N.W.2d 175 (1982). A tortfeasor, such as Dr. Frazin, may quite reasonably not be willing to offer the maximum amount possible to settle unless he receives a complete release. Given the differing incentives and motives of the insured, the subrogated insurer, and the tortfeasor and his insurer, it may be that only the injured party and the tortfeasor can reach an agreement to settle. Consequently, refusing to recognize

634

indemnification agreements could hamper plaintiffs' settlement attempts.

If we were to agree with Compcare's argument, subrogated insurers could refuse to participate in a *Rimes* hearing and then, regardless of the outcome of the hearing, pursue the subrogated amount from the tortfeasor. Such a holding would frustrate settlement attempts; defendants would make lower offers because they could not be assured that a release would be truly final and complete.

■

Because this case presents different equities than *Blue Cross* and because we have come to disagree with some of the reasoning and implications of *Blue Cross,* we conclude that *Blue Cross* does not allow Compcare to assert its subrogation rights. We do not completely overrule *Blue Cross,* however. *Blue Cross* still applies when a plaintiff and tortfeasor settle without involving the subrogated insurer and without submitting the issue of the subrogated insurer's rights to the circuit court.

We also conclude that *Mutual Service* does not allow Compcare to recover. The issue in *Mutual Service* was whether the circuit court erred by dismissing the tortfeasor's insurer from a subrogation action brought by the injured party's insurer after the tortfeasor's insurer settled with the injured party and issued two checks, one of which was issued to all the parties for the amount of the subrogated interest. *Mutual Service,* 140 Wis. 2d at 557. The tortfeasor's insurer had argued that whether the subrogated insurer could recover the subrogated amount depended on whether the settlement had made the injured party whole. *Id.* at 563. The court rejected this argument, saying that neither *Garrity* nor *Rimes* applies "in an action brought by a

635

subrogated insurer against the tortfeasor or the tortfeasor's insurer where the subrogated insurer's insured has previously settled with the tortfeasor." *Id.* at 563–64.

The settling parties in *Mutual Service* did not request a *Rimes* hearing. The Schultes did, Compcare had an opportunity to participate, and the court found that the settlement left the Schultes less than whole. This case presents significantly different equities than *Mutual Service,* and we conclude that the court of appeals erred by relying on *Mutual Service* to reach a conclusion that allowed Compcare to recover.

■

The Wisconsin Health Insurers, in an *amicus* brief, assert that should we reverse the court of appeals, attorneys in future cases will act unethically and collusion will take place between plaintiffs and defendants in order to eliminate subrogated insurers' interests. We totally reject such a view of the profession of the law in this state. While it may be true that there are some individuals in all professions and trades who are incapable of ethical behavior, this court cannot and should not decide cases on such scare tactics. Attorneys operate under ethical rules, and as we develop the common law we must assume that attorneys act ethically.

We also recognize that our cases may conflict to some extent over whether subrogation recoveries decrease premiums. *Compare Rimes,* 106 Wis. 2d at 277 n.4, *with Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 445, 360 N.W.2d 33 (1985). Nevertheless, we think Compcare overstates its case by arguing that reversing the court of appeals will automatically result in higher premiums for "all Wisconsin insureds." In any case, because subrogation is an equi-

table doctrine we must concern ourselves primarily with balancing the equities.

We conclude that when an injured insured settles with the tortfeasor and that person's insurer without resolving the subrogated insurer's part of the claim; the settling parties ask the circuit court to determine whether the injured party has been made whole; and the subrogated insurer has an opportunity to participate in the hearing, the subrogated insurer's rights of subrogation depend on whether the settlement made the plaintiff whole. In such a situation, either the insured or its insurer must to some extent go unpaid. If, as in this case, the circuit court determines that the settlement does not make the plaintiff whole, the subrogated insurer has no right of subrogation.

*By the Court.*—The decision of the court of appeals is reversed.

STEINMETZ, J. *(dissenting).* I agree with the court of appeals decision, *Schulte v. Frazin,* 168 Wis. 2d 709, 484 N.W.2d 573 (Ct. App. 1992), which correctly applies this court's holdings in *Blue Cross v. Fireman's Fund,* 140 Wis. 2d 544, 411 N.W.2d 133 (1987) and *Mutual Service v. American Family,* 140 Wis. 2d 555, 410 N.W.2d 582 (1987) to the facts of this case. The majority decision improperly violates the doctrine of stare decisis by rejecting the result and some of the reasoning in *Blue Cross* and *Mutual Service,* cases which were unanimously decided by this court only six years ago and upon which the parties to this action were entitled to rely.

For tactical reasons, the plaintiffs settled their claim for less than the defendants' insurance policy

637

limits. As the court of appeals stated, "Compcare was notified of a settlement *far below the policy limits* only *after* the settlement had occurred." *Schulte,* 168 Wis. 2d at 717 (citing secs. 655.27, 655.23(4), Stats.). Because the plaintiffs agreed to accept less than the defendants' insurance policy limits, it cannot be said that the plaintiffs have not been made whole. As a result, Compcare should be allowed to assert its subrogation claim against the tort-feasor.

Moreover, contrary to the holding of the majority, the indemnity agreement between the plaintiffs and the tort-feasor should not operate to defeat Compcare's subrogation claim. In *Blue Cross,* this court stated the following:

> Were we to recognize that the existence of an indemnity agreement would bar any claim by a subrogated insurer [against the tortfeasor], all [such] subrogation claims could be barred through the use of indemnity agreements, and our recognition of an independent claim in the [subrogated] insurer [against the tortfeasor] would be meaningless. Because such . . . indemnification agreement[s] essentially attempt[ ] to circumvent an insurer's subrogation rights by placing the responsibility for the tortfeasor's wrong on the victim, we decline to hold that such agreements impair . . . otherwise valid subrogation right[s].

140 Wis. 2d at 554.

For the foregoing reasons, I dissent.