Bruce MULLER and Karen Muller,
d/b/a B & K Sports and Liquors,
Plaintiffs-Respondents-Cross-Appellants,†

v.

SOCIETY INSURANCE,
Defendant-Appellant-Cross-Respondent,

George JERRICK, United Fire and Casualty
and Robert Sorenson,
d/b/a Community Insurance, Defendants.

Court of Appeals

*No. 2006AP976. Submitted on briefs January 16, 2007.
—Decided February 20, 2007.*

2007 WI App 44

(Also reported in 730 N.W.2d 668.)

† Petition to review granted 6/12/07.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *William L. Norine* of Grantsburg.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Society Insurance appeals a judgment in favor of Bruce and Karen Muller, awarding them $59,725.60 out of Society's subrogation settlement for payments it made to the Mullers as a result of

a fire at their sporting goods store. Society argues the court erred in holding the Mullers were entitled to payments from Society to the extent they were not made whole because they settled their claims against the tortfeasors first and there was more than sufficient insurance coverage from which the Mullers could have been made whole. The Mullers cross-appeal the court's judgment because it did not award them the entire amount of Society's subrogation settlement. We agree with Society and reverse the judgment.

BACKGROUND

¶ 2.   On August 11, 2001, during a remodeling project, a fire destroyed Bruce and Karen Muller's sporting goods store in Milltown, Wisconsin. On December 17, 2001, the Mullers sued Jerrick, an electrical contractor, and its insurer United Fire & Casualty to recover underinsured losses from the August 11 fire. The Mullers named as a party defendant their insurer, Society Insurance, which had paid benefits totaling $407,378.88. Society claimed the right of subrogation against Jerrick and its insurer. United admitted it insured Jerrick for the claims with policy limits of one million dollars.

¶ 3.   On March 4, 2003, all the parties attended a mediation. At this mediation, Jerrick and United reached a tentative settlement of Society's subrogation claim for $190,000 pending the resolution by trial or settlement of the Mullers' claims. The court conducted a second mediation between the Mullers and Jerrick and United. At this mediation, the Mullers settled their claims against Jerrick and United for $120,000. However, they claimed additional losses not covered by that settlement or Society's previous payments and asserted the right to recover their net loss from Society. Follow-

ing the Mullers' settlement, United and Jerrick finalized their settlement agreement with Society.

¶ 4.   The Mullers asserted they had a right to a hearing on whether they had been made whole by the settlements. On September 30, 2004, the court concluded to the extent the Mullers' payments from Society and their settlement combined did not make them whole, they were entitled to recover the difference from Society's settlement.

¶ 5.   At a third mediation, the Mullers and Society agreed, after all payments, the Mullers' net loss from the fire was $59,725.60. Having ruled that the Mullers would recover this amount from Society's settlement, the court entered judgment in favor of the Mullers and against Society in the sum of $59,725.60.

DISCUSSION

■

¶ 6.   Both parties appeal portion of the court's judgment. Society appeals whether the court erred in holding Society must disgorge a portion of its subrogation settlement to the Mullers because the Mullers voluntarily settled first for less money than would have made them whole despite the existence of insurance policy limits well in excess of all claims. The Mullers appeal the amount the court awarded them, arguing as a matter of law, they are entitled to the entire amount of Society's subrogation settlement because Society does not have a subrogation claim until they are made whole. Both issues present questions of law that we review de novo. *Schulte v. Frazin*, 176 Wis. 2d 622, 628, 500 N.W.2d 305 (1993).

■

¶ 7.   Subrogation is based upon equitable principles. *Id.* Subrogation "rests upon the equitable prin-

ciple that one, other than volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer." *Garrity v. Rural Mutual Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977). As an equitable principle, subrogation "depends upon a just resolution of a dispute under a particular set of facts." *Vogt v. Schroeder*, 129 Wis. 2d 3, 12, 383 N.W.2d 876 (1986).

¶ 8.  In *Garrity*, our supreme court addressed whether an insurer, who insures the victim and the tortfeasor, may pay its subrogation claims before paying the insured's remaining losses. The court held an insurer may not pay its subrogation claims before it has made the insured whole. *Garrity*, 77 Wis. 2d at 541–42. The court applied its *Garrity* holding in the personal injury context in *Rimes v. State Farm Mutual Automobile Insurance Company*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982). In *Rimes*, the court held the insurer had no subrogation right because it was attempting to collect its claim out of the insured's settlement, which had not made the insured whole. *Id.* at 271. The court also approved of a hearing, which has become known as a *Rimes* hearing, to determine whether the insured has been made whole. *See id.* at 278–79.

¶ 9.  In *Vogt*, the court held an underinsurer has subrogation rights against the tortfeasor and his or her insurer for the amount the underinsurer paid to its own insured prior to the release of the tortfeasor and his or her insurer. The court noted the equities which dictated an insurer to go unpaid in *Garrity* and *Rimes*:

> Because in both *Garrity* and *Rimes* the Court knew from the record that the funds available were insufficient to satisfy the damages of the injured party—i.e., to make him whole, we refused, in equity, to allow the

468

insurer to take, in subrogation, funds from the tort-feasor that would, in the absence of subrogation, have gone toward the satisfaction of the insured's damages.

*Id.* at 14. The *Vogt* court concluded an insured being made whole was not a prerequisite to an insurer pursuing its subrogation claim. *Id.* at 12–13.

¶ 10. In *Blue Cross & Blue Shield United of Wisconsin v. Fireman's Fund Insurance Co.*, 140 Wis. 2d 544, 411 N.W.2d 133 (1987), *overruled in part by Schulte v. Frazin*, 176 Wis. 2d 622, 500 N.W.2d 305 (1993), the supreme court turned to the issue of whether a subrogated insurer, bringing its own action must allege that its insured was made whole by that settlement. The court held the insured did not need to be made whole because the insured settled first for less than the policy limits, leaving an untapped fund from which the subrogated insurer could recover. *Id.* at 551–53. The court refused to give effect to the insured's indemnification agreement against its insurer because the effect of such an agreement places the responsibility for the tortfeasor's wrong on the victim. *Id.* at 554.

¶ 11. On the same day, the court also decided *Mutual Service Casualty Company v. American Family Insurance Group*, 140 Wis. 2d 555, 410 N.W.2d 582 (1987). In *Mutual Service*, the court rejected the argument that a subrogated insurer could only recover its subrogated amount if the insured had been made whole. *Id.* at 563–64. The court held neither *Garrity* nor *Rimes* "is applicable in an action brought by a subrogated insurer against the tortfeasor or the tortfeasor's insurer where the subrogated insurer's insured has previously settled with the tortfeasor." *Id.*

469

¶ 12. Six years later, in *Schulte*, the supreme court disagreed with two parts of the *Blue Cross* decision. First, the court stated the presence of a subrogation interest does affect the amount for which a claim could be settled. *Schulte*, 176 Wis. 2d at 632–33. It reasoned that typical settlements "have limited policy limits and assets" from which to settle and that defendants would pay more to settle all claims at once than to settle them individually. *Id.* Second, the court explicitly overruled the part of *Blue Cross* concerning indemnification agreements. The court reasoned an indemnification agreement creates a limited fund from which both the insured and the insurer must both recover; therefore, the insurer's interests must be subrogated to those of the insured. However, the court did not completely overrule *Blue Cross*. "*Blue Cross* still applies when a plaintiff and tortfeasor settle without involving the subrogated insurer and without submitting the issue of the subrogated insurer's rights to the circuit court." *Schulte*, 176 Wis. 2d at 635.

¶ 13. Most recently, in *Paulson v. Allstate Insurance Company*, 2003 WI 99, 263 Wis. 2d 520, 665 N.W. 2d 744, the supreme court held an insured could not recover the difference between the subrogated insurer's settlement with the tortfeasor and the actual damages. The court rejected the insured's argument that the made whole doctrine applied to a situation where the insured claimed to not have been made whole and the insurer settled first. *Id.*, ¶ 20. In reaching its conclusion, the court focused on the availability of sufficient funds to cover the losses, in particular, the policy limits. *Id.*, ¶ 27. The court concluded the title of the law review article, JA Greenblatt, *When the Pie Isn't Big Enough, Who Eats Last?*, 64 U. CHI. L. REV. 1337 (1997), "illustrates the exact situation in which we find that the

*Rimes/Garrity* cases apply; if there is no doubt that the 'pie' is big enough, we find that the *Rimes/Garrity* issue does not arise." *Id.*, ¶ 26 n.3.

■

¶ 14. Generally, an insurer is not allowed to recover its subrogation interest until its insured has been made whole. *Garrity*, 77 Wis. 2d at 541–42. The principle reason for this general rule is that the insurer and insured become competitors for the same partial payment, and the insurer has been paid to assume the risk of the loss. *See id.* at 542. However, if there is no doubt that there are enough funds to cover the claimed losses, there is no issue regarding subrogating the insurer's interest. *Paulson*, 263 Wis. 2d 520, ¶ 26 n.3.

¶ 15. Here, Society argues the court erred in awarding the Mullers $59,725.60 of Society's subrogation settlement because the Mullers settled first, there were more than enough funds to cover all claims, and the Mullers did not provide an indemnification against Society's claims. In contrast, the Mullers argue the court correctly awarded them the $59,725.60 because the funds available to settle their claims were limited, thereby preventing them from being made whole. They contend the amount a plaintiff has available to recover from is limited to how much a defendant is willing to pay to settle the claim. Thus, the Mullers assert the fund was limited to $310,000. However, other than a broad assertion of equity, the Mullers do not provide any authority for their proposition that a limited fund is created by what a defendant is willing to pay to settle.

■

¶ 16. The presented case is distinguishable on two points from cases in which courts have held the funds were limited, which created competition that prevented the insured from being made whole. First, the one

million dollar policy limit was far more than adequate to cover all the claims. The cases in which the funds were limited there were clearly insufficient funds to cover the damages claims. While we do not hold policy limits are per se the measure of whether a fund is limited, policy limits are certainly a significant factor in determining whether limited funds exist. *See id.*, ¶ 27. In this case, those limits were one million dollars, which would have clearly covered the Mullers' damages.

¶ 17.   Second, the amount which could have been recovered was not limited by either Society or the Mullers. The Mullers characterize Society's tentative agreement as an underhanded tactic, which inhibited their ability to fully settle their claims. The tentative settlement was contingent upon the resolution of the Mullers' claims and was not implemented until after they released their claims. We fail to see how a tentative agreement, expressly contingent upon the insured resolving its claims, inhibits the insured's ability to be made whole. Unlike *Schulte*, the Mullers did not agree to indemnify Jerrick against Society in their agreement.

█

¶ 18.   Where there are sufficient funds to cover all the losses, where there are no indemnification agreements, and where there is an opportunity to recover from those funds, there is not a limited fund. Through their settlement, the Mullers made a conscious choice to accept less than their losses. However, this choice cannot plausibly be tied to any limited funds. It is interesting to note, had Society chose not to pursue its subrogation claim against Jerrick and United, the Mullers would not be able to recover any more monies. Because they have not established in the absence of subrogation the amount of Society's settlement that

472

would have gone towards the satisfaction of their damages, the Mullers are not entitled to more money simply because Society pursued its subrogation claims.

¶ 19.  The Mullers cross-appeal the court's award of $59,725.60, arguing until they are made whole Society does not have a subrogation claim, and therefore, they are entitled to the full $190,000 subrogation settlement. We reject this argument because, as we concluded above, Society was entitled to pursue its own subrogation claim and settle it for an amount it deemed sufficient where there were sufficient funds and the Mullers had the first opportunity to recover their losses.

*By the Court.*—Judgment reversed.