Elsie M. GORDON and Albert J. Gordon, Plaintiffs-Appellants,

v.

WISCONSIN HEALTH ORGANIZATION INSURANCE CORPORATION, Defendant-Respondent,†

VIKING INSURANCE COMPANY OF WISCONSIN, Richard L. Klinkhammer and Lumbermens Mutual Casualty Company, Defendants.

Court of Appeals

*No. 92–2479. Submitted on briefs September 13, 1993.—Decided December 29, 1993.*

(Also reported in 510 N.W.2d 832.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John V. O'Connor* and *Debbie K. Lerner* of *O'Connor & Willems, S.C.* of Kenosha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Edward W. Stewart* of *Mitchell, Baxter & Ziegler, S.C.* of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. The issue on appeal is whether Elsie M. and Albert J. Gordon were entitled to a "made whole" hearing pursuant to *Rimes v. State Farm Mutual Automobile Insurance Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982), before the trial court granted a default judgment against the tortfeasor and in favor of Wisconsin Health Organization (WHO), the Gordons' subrogated health insurance carrier. The trial court ruled that the Gordons were not entitled to a *Rimes* hearing. Based on *Schulte v. Frazin*, 176 Wis. 2d 622, 500 N.W.2d 305 (1993), a Wisconsin Supreme Court decision released after the trial court's ruling, we reverse and remand for a *Rimes* hearing.

## I. BACKGROUND AND TRIAL EVENTS

The facts are straightforward and undisputed. In March 1988, Elsie Gordon was riding in a vehicle driven by her husband when the vehicle was struck

from behind by a vehicle driven by Richard L. Klinkhammer. At the time of the accident, Klinkhammer's vehicle was insured by Viking Insurance Company of Wisconsin (Viking). The Gordons sued Klinkhammer and Viking, alleging that Klinkhammer's negligence caused Elsie's injuries.

The Gordons also named WHO as a subrogated defendant based upon WHO's payment of Elsie's medical bills.[1] The Gordons' allegation against WHO included the following:

> That there may be insufficient funds from which to honor such subrogation agreement, if applicable, and the interest of said defendant, Wisconsin Health Organization Insurance Corporation, is therefore, subordinate to the interest of the plaintiffs . . . and the proceeds of this action, and such interest of said defendant, if applicable, should be honored only after determination has been made that the plaintiffs have been made whole.

The Gordons' prayer for relief included their request that the trial court determine WHO's "subrogation rights, if any."

WHO counterclaimed against the Gordons and cross-claimed against Viking and Klinkhammer alleging its subrogation interest. WHO's counterclaim and cross-claim stated:

> If the claim of the plaintiffs should be settled prior to verdict under circumstances in which it is

---

[1] Although the Gordons' complaint also joined Lumbermens Mutual Casualty Company, the Gordons' automobile insurer, as a subrogated defendant based upon its payment of certain hospital and medical expenses associated with Elsie's injuries, Lumbermens is not a party to the appeal and, therefore, we do not refer to it further.

claimed that the plaintiffs are not made whole and that the subrogated interest of Wisconsin Health Organization is extinguished, then, and in that event, Wisconsin Health Organization is entitled to a full hearing on all pertinent issues and a declaratory ruling as to what extent it may equitably share in said settlement.

All of the parties, including WHO, conducted settlement negotiations. Eventually, the Gordons and Viking settled for less than Viking's policy limits. WHO did not join in the settlement and the settlement agreement did not provide any payment to WHO. In addition, the settlement agreement obligated the Gordons to indemnify Viking and Klinkhammer against any claim arising from the accident.[2]

---

[2] In their brief-in-chief, the Gordons make a number of representations challenged by WHO. First, the Gordons contend that under the terms of the settlement they were required to indemnify Viking and Klinkhammer only if the latter "were found to be liable for an amount in excess of the settlement." Second, the Gordons state that "[b]y terms of the agreement, the portion of the settlement proceeds the Gordons would receive was expressly contingent upon the outcome of a *Rimes* hearing." Third, the Gordons state that they "deposited an amount of money equal to the sum previously requested by WHO, into trust." WHO contends that the parties' settlement agreement does not support these statements.

We previously granted WHO's request to supplement the appellate record with the parties' "General Release." This document does not support the statements made by the Gordons. The Gordons' reply brief intimates that the parties may have executed a further and separate release beyond the "General Release" and that this further document supports their statements. Regardless, this document, assuming it exists, is *dehors* the record and the Gordons' reliance on such information is improper.

Having settled with the Gordons and having received a full release of their liability together with the Gordons' promise of indemnification, Viking and Klinkhammer did not appear at the scheduled trial. WHO and the Gordons did appear. Based on Viking's and Klinkhammer's nonappearance, WHO moved the trial court for default judgment which, if granted, · would trigger the Gordons' indemnification promise. In support of its request, WHO argued that its subrogated claim against Viking and Klinkhammer survived the parties' pretrial settlement. WHO also argued that the Gordons' agreement to indemnify Viking and Klinkhammer was without effect because it attempted "to circumvent an insurer's subrogation rights by placing the responsibility for the tort-feasor's wrong on the victim."

The Gordons resisted WHO's default judgment motion, arguing that because any recovery by WHO was the obligation of the Gordons by virtue of their agreement to indemnify Viking and Klinkhammer, the trial court must first decide whether WHO had an interest in the settlement and, if so, how much of the settlement should be allocated to each party.

After receiving briefs from the parties and accepting evidentiary support for the amount of WHO's cross-claim by affidavit, the trial court granted WHO default judgment against Viking and Klinkhammer for the full amount of WHO's subrogated claim. The trial court based its ruling on the then recent court of appeals decision in *Schulte v. Frazin*, 168 Wis. 2d 709, 484 N.W.2d 573 (Ct. App. 1992) (*Schulte I*). This decision, however, was subsequently reversed by the

---

While we are concerned about the Gordons' representations which do not appear to be supported by the record, these matters are not dispositive of the appellate issues.

supreme court in the interim between the trial court's decision and the parties' briefing before this court. *See Schulte v. Frazin*, 176 Wis. 2d 622, 500 N.W.2d 305 (1993) (*Schulte II*).

The Gordons appeal. Further facts will be provided as they become relevant to our discussion of the appellate issue.

## II. SUFFICIENCY OF THE GORDONS' REQUEST FOR A RIMES HEARING

We first address WHO's argument that the Gordons failed to ask the trial court to conduct a *Rimes* hearing.[3] To answer this argument, we begin with the parties' pleadings.

As we have already noted, the Gordons' complaint against WHO specifically raised the prospect that the moneys available to compensate the Gordons might not be sufficient to accommodate WHO's subrogation claim. In such event, the Gordons' complaint contended that WHO's claim was subordinate and, most importantly, specifically asked the trial court to determine whether the Gordons had been "made whole," the very watchwords of *Rimes. See Rimes*, 106 Wis. 2d at 271-76, 316 N.W.2d at 353-55.

By its combined counterclaim against the Gordons and cross-claim against Viking and Klinkhammer, WHO similarly acknowledged the competing interests between itself and the Gordons regarding any settlement moneys. By this pleading, WHO also invoked the watchwords of *Rimes*, specifically anticipating that the

---

[3] WHO did not raise this precise issue in the trial court. Nonetheless, a party on appeal may argue for affirmance based upon an issue not raised in the trial court. *See In re Billy Jo W.*, 173 Wis. 2d 310, 318, 497 N.W.2d 135, 137 (Ct. App. 1992).

521

Gordons might contend that a settlement might not make them whole.

It is thus apparent that both parties consciously anticipated from the very outset that a *Rimes* hearing might be necessary in this case.

We now move to the proceedings on the day of the scheduled trial. In the course of a lengthy debate between the parties following WHO's motion for default judgment, the Gordons' counsel argued that on the basis of WHO's answer and counterclaim, *some kind of hearing* was required to determine the amount of WHO's subrogated interest and its right to share in the proceeds of the Viking settlement. We quote at length from counsel's argument:

> The time for bringing a default, etc., has passed. Procedurally, we are in a position whereby [WHO has] got to prove up paragraph two [of their cross-claim and counterclaim]. That is their subrogated interest, and it's a cross-claim back against us.
>
> . . . .
>
> We claimed that [WHO does] not have an interest and were not entitled to be reimbursed. [WHO] claimed that they were and that should we settle that they would come into court and prove it up and be entitled to a hearing to show what portion of it they would be entitled to, that they would be entitled to that declaratory relief to declare what portion of the settlement they are entitled to.
>
> . . . .
>
> In this particular case, it's not an expanding pie. You know, whether or not the policy limits had been paid is something that is not in issue. *The question is what portion of that pie belongs to the [Gordons] and what portion of it belongs to WHO.*

> *And that is where we are and that's where the Court has got to establish proof . . . .* [Emphasis added.]

WHO argues that "nowhere in the transcript . . . does counsel for the Gordons even mention *Rimes* or assert that the Gordons have not been made whole by their settlement." True enough. But WHO's argument places form over substance and entirely overlooks the "made whole" issue drawn between the parties in their pleadings. This, combined with the Gordons' argument at the hearing that WHO had no interest in the settlement proceeds, that WHO should be held to prove up its claim, and that the court should decide how much of the settlement moneys belonged to the Gordons and how much to WHO, clearly signaled to all concerned that the Gordons wanted a *Rimes* hearing. *See State v. Salter*, 118 Wis. 2d 67, 79, 346 N.W.2d 318, 324 (Ct. App. 1984).

WHO's own stance at the hearing belies its appellate argument that the Gordons did not seek a *Rimes* hearing. In support of its argument that the Gordons should not be permitted to participate in the proceeding on WHO's application for default judgment against Viking and Klinkhammer, WHO's counsel stated, "And if you read our pleadings, we had a counterclaim against the plaintiff *only to reserve a Rimes hearing when there's questions of wholeness.*" (Emphasis added.) Counsel then attempted to convince the trial court that this was a *Blue Cross*[4] case, not a *Rimes* case.

We cannot fathom how counsel can argue on appeal that the Gordons never asked the trial court for

---

[4] *Blue Cross & Blue Shield United v. Fireman's Fund Ins. Co.*, 140 Wis. 2d 544, 411 N.W.2d 133 (1987), *overruled in part, Schulte v. Frazin*, 176 Wis. 2d 622, 500 N.W.2d 305 (1993).

a *Rimes* hearing when he argued in the trial court against the Gordons' right to such a hearing.

For these reasons, we reject WHO's argument that the Gordons did not sufficiently request a *Rimes* hearing.[5]

## III. ENTITLEMENT TO A RIMES HEARING

Having concluded that the Gordons requested a *Rimes* hearing, we now consider whether this is a case which required such a hearing. Under *Schulte II*, we conclude that it is.

Pursuant to *Schulte*, the issue before us presents a question of law. *Schulte II*, 176 Wis. 2d at 628, 500 N.W.2d at 307. Moreover, the issue requires that we apply the established law to a set of undisputed facts. This also presents a question of law which we review *de novo. See State Elections Bd. v. Hales*, 149 Wis. 2d 306, 309, 440 N.W.2d 579, 580 (Ct. App. 1989).

*Schulte II* is a mirror image of this case. Like the Gordons, the Schultes sued the tortfeasor, his liability insurance carrier and their own subrogated insurance carrier. Like WHO, the subrogated insurer counterclaimed against the Schultes and cross-claimed against the tortfeasor. Like WHO's counterclaim and cross-

---

[5] We also reject WHO's argument that the Gordons failed to properly make a motion for a *Rimes* hearing pursuant to the requirements of sec. 802.01(2)(a) and (b), Stats., governing motion practice. Here, as we have demonstrated, the Gordons' *complaint* against WHO requested and preserved their right to a *Rimes* hearing. A complaint which states a cause of action against a defendant carries with it the implicit request that the matter be tried. We know of no law which requires such a claimant to additionally move for a trial under sec. 802.01.

claim, the subrogated insurer preserved its right to a *Rimes* hearing. Like this case, the Schultes settled with the tortfeasor, but the subrogated insurer refused to join in the settlement. Like the settlement agreement here, the Schultes agreed to indemnify the tortfeasor and his liability insurance carrier. However, unlike this case, the trial court determined that the settlement did not make the plaintiff whole. That question, of course, remains unresolved in this case.

Under such facts, the court of appeals ruled that the subrogated insurer retained its right to pursue its subrogation claim to the detriment of its insured. *See Schulte I*, 168 Wis. 2d at 714-19, 484 N.W.2d at 575-77. The supreme court reversed, holding:

> [W]hen an injured insured settles with the tortfeasor and that person's insurer without resolving the subrogated insurer's part of the claim; the settling parties ask the circuit court to determine whether the injured party has been made whole; and the subrogated insurer has an opportunity to participate in the hearing, *the subrogated insurer's rights of subrogation depend on whether the settlement made the plaintiff whole.* . . . If, as in this case, the circuit court determines that the settlement does not make the plaintiff whole, the subrogated insurer has no right of subrogation.

*Schulte II*, 176 Wis. 2d at 637, 500 N.W.2d at 310-11 (emphasis added).

In so holding, the supreme court retracted its language in *Blue Cross & Blue Shield United v. Fireman's Fund Insurance Co.*, 140 Wis. 2d 544, 553, 411 N.W.2d 133, 136 (1987), that the "injured party's recovery is not constrained by the existence of the subrogated insurer's cause of action." *Schulte II*, 176 Wis. 2d at 632-33, 500 N.W.2d at 309. Instead, the supreme court

recognized the reality that "settling plaintiffs and subrogated insurers usually compete in a practical sense for limited settlement funds." *Id.* at 633, 500 N.W.2d at 309.

As a result, the supreme court in *Schulte II* limited the reach of *Blue Cross* to only those situations "when a plaintiff and tortfeasor settle without involving the subrogated insurer and without submitting the issue of the subrogated insurer's rights to the circuit court." *Id.* at 635, 500 N.W.2d at 310. That, of course, is not the situation in this case. Here, even though WHO did not ultimately agree to the settlement, it was involved in the settlement negotiations. And, as we have already held, the parties by their pleadings and their conduct asked for a *Rimes* "made whole" hearing. These facts bring this case squarely under the supreme court's decision in *Schulte II*.

We reverse the trial court's judgment and remand for a *Rimes* hearing.

*By the Court.*—Judgment reversed and cause remanded with directions.